FIGUEROA, PLAINTIFF AND APPELLEE, *v.* PIERLUISI, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Ponce in an Action for Divorce.

No. 1605.—Decided July 2, 1917.

DIVORCE—COMPLAINT—INSUFFICIENT CAUSE.—In view of the public interest and public policy in matters of this kind, a complaint for divorce is insufficient which alleges only that the plaintiff was compelled to enter a hospital for the purpose of submitting to a necessary surgical operation and while there his wife, the defendant, instead of devoting herself to nursing and taking care of him, abandoned him completely, without consideration for the state of his health, and occupied her time in gadding about, visiting and entertaining, and when the plaintiff complained to her of such conduct she answered him contemptuously, saying that she could not spend her youth with a curmudgeon; that she was sorry she had married him and was tired of the married life; that she hated and despised him, and that she was disposed to break the matrimonial bond forever and abandon her husband and home.

ID.—CRUEL TREATMENT.—The fact that married persons live unhappily together from unruly tempers or marital wranglings and mere austerity of temper, petulance of manner, rudeness of language, or even occasional sallies of passion, if they do not threaten bodily harm or impairment of health, do not, as a general rule, amount to cruelty. The marriage status is one wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes.

The facts are stated in the opinion.

*Mr. Alberto S. Poventud* for the appellant.

The appellee did not appear.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Plaintiff-appellee brought suit for divorce, setting forth in his complaint the following facts:

"*First*.—That plaintiff Florencio Figueroa y Reyes and Paula Pierluisi y Grau contracted marriage in Barcelona, Spain, on October 14, 1899; that both are of age and reside in Villalba, Juana Díaz, Porto Rico, and that they have resided in this Island, of which they are natives, from 1900 until now.

"*Second*.—That the following children, all minors, have been born of the said marriage: Gloria, Carmen, Guillermo, Margarita, Angélica, Florencio, Elsa and Ramón.

"*Third*.—That there is community property acquired during the wedlock.

"*Fourth*.—That the plaintiff was compelled to enter the *Hospital de Damas* for the purpose of submitting to a necessary surgical operation and while he was there his wife, the defendant, instead of devoting herself to nursing and taking care of him, abandoned him completely, without consideration for the state of his health, and occupied her time in gadding about, visiting and entertaining, and when the plaintiff complained to her of such conduct she answered him contemptuously, saying that she could not spend her youth with a curmudgeon; that she was sorry she had married him and was tired of the married life; that she hated and despised him, and that she was disposed to break the matrimonial bond forever and abandon her husband and home.

"*Fifth*.—That this occurred in the presence of several persons and caused scandal and the humiliation of the plaintiff."

Defendant defaulted and the district court, after hearing the evidence adduced by plaintiff, decreed a divorce and ordered the delivery of the minor children into the custody of plaintiff and the liquidation of the community property.

Appellant insists that the court erred in not dismissing the complaint for want of facts sufficient to constitute a cause of action.

Appellee has filed no brief and did not appear at the hearing.

The proposition submitted by appellant seems to be sound upon its merits, and, in view of the public interest and public policy in matters of this kind, we do not feel disposed of our own motion to interpose any technical objection.

The complaint does not show either the character of the surgical operation referred to or the duration of plaintiff's sojourn in the hospital. He may have remained there for a day or for an afternoon. The operation may have consisted in the cutting of a carbuncle on his neck or in the removal of a *nigua* from one of his toes. Moreover, the theory of a duty upon the part of a wife to care for and minister to the wants of a husband who voluntarily has left his home and placed himself in charge of the expert professional personnel of a hospital seems somewhat dubious if not wholly inconsistent with the necessary restrictions and actual conditions obtaining in any well regulated institution.

It seems that the defendant is the mother of eight children, the oldest of whom can hardly be more than sixteen years of age, but it does not appear that any of these suffered from neglect. And while the disrespectful language complained of was addressed to plaintiff in the presence of others, yet it was in response to a complaint by the husband as to alleged misconduct of defendant evidently made before the same witnesses, and, therefore, well calculated to arouse resentment and invite recrimination rather than to elicit explanation and apology. In the circumstances a resort to the only effective weapon available to a wife in such an emergency becomes a matter of self-defense, aside from any question as to the independent exercise of an inalienable right inherent in all women by reason of their sex.

Of course, the evidence adduced may have supplied in a measure the defects in the complaint, but we cannot assume this to be the fact in the total absence of a statement of the case and in the face of the sole finding made by the trial judge, to wit, that "each and all of the facts alleged in the complaint and essential to constitute the cause of action instituted have been satisfactorily proven."

Conceding, for the sake of argument, that the language imputed to defendant, uttered upon a single isolated occasion,

and provoked by a protest made by the husband in the presence of various persons, accusing the wife of alleged improper conduct, together with the sort of neglect described in the complaint, is enough to indicate some degree of incompatibility of temperament, yet we are aware of no case that has gone so far as to hold that such treatment of a normal husband by a nervous wife amounts to legal cruelty. There is no suggestion of a supersensitive disposition or unusual susceptibility on the part of plaintiff or other special circumstance that might tend to aggravate the effect of the acts imputed to defendant upon the mind of plaintiff, and no averment whatever of that ''grievous mental suffering'' which has been held in some of the more recent decisions, such as *McDonald* v. *McDonald,* 155 Cal. 665, to constitute extreme cruelty.

''It is universally recognized, at least theoretically, that parties cannot be divorced on the ground of cruelty merely because they live unhappily together from unruly tempers or marital wranglings. Married persons must submit to the ordinary consequences of human infirmities and of unwise mating, and the misconduct which will be ground for a divorce as constituting cruelty must be serious. And mere austerity of temper, petulence of manners, rudeness of language, or even occasional sallies of passion, if they do not threaten bodily harm or impairment of health do not as a general rule amount to cruelty. As has well been said, the husband and wife are bound to exercise greater efforts for removing misapprehension, allaying quarrels, smoothing the road to concord, and effecting reconciliation, than are people in other relations of life. The marriage status is not merely contractual so as to entitle each of the parties to demand the strict letter of the bond. It is a status wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes.'' 9 R. C. L. 336, §116.

The judgment appealed from should be reversed and the case dismissed.

*Reversed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.